UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TRUSTEES OF THE AMALGAMATED
INDUSTRIAL and TOY & NOVELTY
WORKERS OF AMERICA, LOCAL 223
- SICK BENEFIT FUND, PENSION
FUND and LOCAL 223 HARRY O.
DAMINO SCHOLARSHIP FUND,

                        Plaintiffs,        **REPORT AND**
                                                  **RECOMMENDATION**

       - v -

                                                      CV 10-3399 (FB)(VVP)

SURPRISE PLASTICS, INC.,

                        Defendant.
----------------------------------------------------------x

This matter was referred to me by the Honorable Frederic Block for a report and recommendation regarding the default of the defendant Surprise Plastics, Inc., (hereafter "Surprise Plastics") and the amount of damages and attorney's fees to awarded to the plaintiffs – Trustees of the Amalgamated, Industrial and Toy & Novelty Workers of America, Local 223- Sick Benefit Fund, Pension Fund, and Local 223 Harry O. Damino Scholarship Fund (hereafter "the Funds") – as against the defaulting defendant. The trustees are the administrators of various employee benefit plans to which the defendant was obligated to make contributions and remit other payments pursuant to a collective bargaining agreement ("CBA") between Local 223 ("the Union") and the defendant. *See* Complaint [DE 1] ¶ 12.[1] The case involves the defendant's alleged violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") by its failure to meet

---

[1]"DE" refers to the docket entry number where the document may be found. A copy of the CBA is annexed as Exhibit C to the Affirmation of Danielle M. Carney, Nov. 4, 2010 [DE 4] (hereafter "First Carney Aff.") .

its payment obligations to the Funds as required by the terms of the CBA. *Id.* ¶¶ 14-16. The plaintiffs seek to recover the delinquent payments plus interest and liquidated damages under ERISA. The plaintiffs also request that the court award attorney's fees and costs.

**A.     ENTRY OF DEFAULT JUDGMENT**

"It is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001), *quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999) (internal quotations omitted). When deciding whether to enter default the court considers various factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court believes it later would be obligated to set aside the default on defendant's motion. *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d at 281 *citing* Moore's Federal Practice § 55.20 {2}{b} (3d ed. 1999). In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiffs have filed an affidavit of a licensed process server attesting to service of the summons and complaint in this action on the defendant in accordance with the

provisions of Section 311(a)(1) of the New York Civil Practice Law and Rules. Such method of service is authorized by Rule 4 (c)(1) of the Federal Rules of Civil Procedure. The defendant has failed to interpose an answer, or otherwise respond to the complaint. Nor has the defendant responded to plaintiffs' application for default. The grounds for default are therefore clearly established, and there are no grounds for believing the default is based on a good-faith mistake or technicality. *See Cablevision Systems New York City Corporation v. Leach*, No. 01 Civ. 9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Finally, based on the defendant's inaction, it is unlikely that the court will be compelled at some future date to enter an order vacating the default judgment. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

**B.     LIABILITY**

By virtue of the defendant's default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiffs' damages. *See, e.g., Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The Funds are multi-employer welfare benefit plans organized under ERISA, and administered by representatives of employers and employees engaged in interstate commerce. *See* Complaint ¶ 5. The Funds provide fringe benefits to eligible employees on whose behalf the employer is required to contribute to the Funds pursuant to the terms of the CBA. *Id.* ¶ 6. The court is required to accept as true that the defendant was required by the CBA to submit

contribution reports setting forth the hours that each employee worked and the amount of the contributions owed to the Funds pursuant to the rate schedules set forth in the CBA. *Id.* ¶¶ 10-13. As a result of work performed during the period from August 2009 through May 2010 by individual employees of the defendant there became due and owing to the Funds fringe benefit contributions, which Surprise Plastics had failed and refused to remit. *Id.* ¶¶ 14-16.

These facts are sufficient to establish the defendant Surprise Plastic's liability for violations of ERISA which states, "every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Having failed to make required contributions, the defendant is therefore liable under ERISA.

**C.    DAMAGES**

ERISA provides a right of action for recovery of

(A)   the unpaid contributions
(B)   interest on the unpaid contributions
(C)   an amount equal to the greater of -
      (I) interest on the unpaid contributions, or
      (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State Law) of the amount determined by the court under subparagraph (A).
(D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)   such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). The plaintiffs are seeking recovery for all the above listed items except for those in subsection (E).

Federal Rule 55(b) requires the court to make an independent assessment of damages when deciding a motion for default judgment. *See Securities & Exch. Comm'n v. Management Dyn., Inc.,* 515 F.2d 801, 814 (2d Cir. 1975). Having provided notice to the defaulting defendant, the court is permitted to consider affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection by any party to that procedure, the court has received and considered affidavits submitted by the plaintiffs. The defendant has made no submissions as to damages.

In support of the request for delinquent contributions, and other statutory damages, the plaintiffs have provided an affirmation by their attorney, Danielle Carney, Esq., *see* First Carney Aff., and an affidavit by one of the Funds' trustees, *see* Affidavit of Johnnie Miranti, Dec. 13, 2010 [DE 12] ("Miranti Aff."). Among the documents appended to the Carney Affidavit are a Statement of Damages and a summary of the balance due as of November 1, 2010. Carney Aff. Exh. D, E. Appended to the Miranti Affidavit are the applicable CBA provisions, as well as the remittance reports submitted by the defendant from August 2009 through September 2010. *See* Miranti Aff. ¶¶ 2-3, Exh. A, B, C, and E. The remittance reports list the employees for whom contributions are due, along with the rates and hours

worked and the total contributions owed. *Id.* ¶ 3, Exh B.² The remittance reports and payments are submitted monthly and are due by the last day of the month immediately following the month to which the report applies. *Id.*

The remittance reports submitted to the court do not directly correspond with the summary of the balance due. The remittance reports cover the period from the week ending August 1, 2009 through the week ending September 25, 2010, while the summary covers the period from August 2009 through the end of October 2010. *Compare* Miranti Aff. Ex. B *with* First Carney Aff. Ex. E. Moreover, the remittance reports tabulate the amounts of contributions owed on a weekly basis, whereas the summary provides figures on a monthly basis. Nevertheless, the court's own tabulation of the remittance reports yields an amount due through September 25, 2010 that corresponds fairly closely with the amounts reflected on the summary for the period through September 2010.³ Moreover, the additional amount sought by the plaintiffs through the end of October 2010, over and above that reflected in the remittance reports through September 25, 2010, is well within the expected amount of contributions that would be owed for a month or so.⁴ The court thus concludes that the

---

²The rate for the Sick Benefit Fund is $3.21 per hour, the Pension Fund rate is $.45 per hour, and the Scholarship Fund is $.30 per employee per week.

³The remittance reports reflect a total of $48,656.37 in contributions owed through September 25, 2010; the summary shows a total of $47,043.26 owed through September 2010.

⁴The plaintiffs seek $51,941.26 in unpaid contributions through the end of October 2010. The remittance reports through September 25, 2010 substantiate that total contributions owed through that date is $48,656.37. Thus, there is a difference of $3,284.89 that is not substantiated by remittance reports. However, the average monthly amount of contributions owed for the period covered by remittance reports ($48,656.37 ÷ 14) is $3,475.46, which is entirely consistent with the additional amount sought by the plaintiffs for the month for which remittance reports were not submitted.

plaintiffs have provided an adequate evidentiary basis for their claim that the unpaid contributions to the Funds for the months August 2009 through October 2010 total $51,941.26 as reflected in the summary. *See* First Carney Aff. Exh. E.

The plaintiffs are also entitled to interest on the unpaid contributions. ERISA section 502(g)(2) states, in pertinent part, that "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." *See* 29 U.S.C. § 1132(g)(2). The applicable interest rate under the CBA is 1% per month. *See* Miranti Aff.. ¶ 4, Exh. E.[5] At that rate, the plaintiffs are entitled to interest in the amount of $8,206.56 through August 31, 2011, plus $17.31 per day thereafter to the date of judgment.[6]

Finally, under the terms of ERISA and the CBA, the plaintiffs are also entitled to liquidated damages in an amount equal to 20% of the unpaid contributions, which comes to $10,388.25. *See* Miranti Aff. ¶ 6, First Carney Aff. Exh. A, art. 2, ¶ 23.

D. **ATTORNEY'S FEES AND COSTS**

The plaintiffs are also seeking attorney's fees and costs, both of which are available under ERISA, *see* 29 U.S.C. 1132(g)(2)(D), and pursuant to the terms of the CBA. *See*

---

[5]The Miranti Affidavit miscites Exhibit C as the applicable interest provision in the CBA. The provision is found in subparagraph 26.8 in Exhibit E.

[6]The plaintiffs' statement of damages erroneously states the interest owing, as of October 31, 2010, to be $519.38. *See* First Carney Aff. Exh. D. The statement is erroneous because the calculation of that amount, reflected in First Carney Aff. Exh. E, assumes that all of the amounts were but one month overdue at that point when, in fact, some of the contributions were as much as 13 months overdue at that time, and of course are now even more overdue. The court's tabulation of interest may be found in an appendix at the end of this opinion.

Affirmation for Judgment by Default for Attorneys Fees [DE 11] ("Second Carney Aff."). To determine a fee award in this circuit, the court is charged with deciding the "presumptively reasonable fee" for the work performed in the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The first step in this process is for the court, in the exercise of its considerable discretion, "to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.*, 522 F.3d at 190 (emphasis in original); *accord, McDaniel v. County of Schenectady, et al.,* 595 F.3d 411, 420 (2d Cir. 2010). In determining this "reasonable hourly rate" the court is to be guided by what a paying client would be willing to pay, keeping in mind that a reasonable paying client would wish "to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. The court then calculates the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To facilitate this analysis, the Second Circuit requires that attorneys applying for court-ordered compensation document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2nd Cir. 1983). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See Carey*, 711 F.2d at 1148; *Private Sanitation Union Local 813, Int'l Bhd. of Teamsters v. Gaeta-Serra Associates, Inc.*, No. 02–CV-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y.

Aug. 12, 2005). In addition, the court may exclude hours that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* No. 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003) (*citing Hensley,* 461 U.S. at 434; *Luciano,* 109 F.3d at 116).

In reviewing the submissions on this issue, the court finds that the attorney time sheet is sufficiently detailed, and that the rate charged by counsel is reasonable. The attorney who worked on this matter billed 10 hours at $200 per hour. *See* Second Carney Aff. ¶ 4, Exh. A. The court therefore recommends that the plaintiffs be awarded $2,000 in attorney's fees. Lastly, the plaintiffs have requested costs and disbursements of $475, consisting of the filing fees and the cost of service of process. *See* First Carney Aff. ¶ 8, Exh D. Therefore, the plaintiffs should also recover costs in the amount of $475. *See* 29 U.S.C. § 1132(g)(2)(D).

## CONCLUSION

In accordance with the above considerations, I hereby **RECOMMEND** that the plaintiffs' application for a default judgment be granted and that an award of damages should be made in the following amounts against the defendant Surprise Plastics, Inc.:

1. Unpaid contributions in the amount of $51,941.26;

2. Interest in the amount of $8,206.56 through August 31, 2011, plus $17.31 per day thereafter to the date of judgment;

3. Liquidated damages in the amount of $10,388.25;

4. Attorney's fees and costs in the amount of $2,475.

\*       \*       \*       \*       \*       \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiffs shall serve a copy of this Report and Recommendation on the defendant by overnight mail and file proof of such service in the record.**

                                                    Respectfully recommended,

                                                    *Viktor V. Pohorelsky*
                                                  VIKTOR V. POHORELSKY
                                                  United States Magistrate Judge

Dated:    Brooklyn, New York
             September 2, 2011

# APPENDIX

<u>INTEREST ON AMOUNTS OWED BY SURPRISE PLASTICS THROUGH AUGUST 31, 2011</u>

| <u>Month</u> | <u>Amount Owed</u> | <u>No. of Months</u>[7] | <u>Interest at 1%/Month</u> |
|---|---|---|---|
| Aug - 09 | $3,662.50 | 23 | $842.37 |
| Sep - 09 | 2,110.56 | 22 | 464.32 |
| Oct - 09 | 3,662.50 | 21 | 769.13 |
| Nov - 09 | 2,478.36 | 20 | 495.67 |
| Dec - 09 | 2,930.00 | 19 | 556.70 |
| Jan - 10 | 4,395.00 | 18 | 791.10 |
| Feb - 10 | 4,102.00 | 17 | 697.34 |
| Mar - 10 | 4,102.00 | 16 | 656.32 |
| Apr - 10 | 4,102.00 | 15 | 615.30 |
| May - 10 | 4,033.50 | 14 | 564.69 |
| Jun - 10 | 2,211.36 | 13 | 287.48 |
| Jul - 10 | 3,357.40 | 12 | 402.89 |
| Aug - 10 | 3,282.56 | 11 | 361.08 |
| Sep - 10 | 2,613.52 | 10 | 261.35 |
| Oct - 10 | <u>4,898.00</u> | 9 | <u>440.82</u> |
| **TOTALS:** | **$51,941.26** | | **$8,206.56** |

Daily Accrual Rate: $17.31[8]

---

[7]The number of months is calculated by starting with the month two months after the month for which contributions are due. Thus, for example, the months for which interest is due for the contributions for August 2009 commences with October 2009 because the August 2009 contributions became due on September 30, 2009.

[8]The Daily Accrual Rate is calculated by multiplying the total contributions due ($51,941.26) by the monthly interest rate of 1%, and dividing by 30.